IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ROY FRANKLIN HILLBERRY, II,

        Plaintiff,

v.                                    Civil Action No. 5:13CV113
                                                   (STAMP)
LT. R. ELDER, in his individual capacity,
SGT. W. O. STEWART, in his individual capacity,
CORP. RETA MAYS, in her individual capacity,
OFFICER RICHARDS, in his individual capacity,
OFFICER ADAMS, in his individual capacity,
OFFICER TIMOTHY ABNER, in his individual capacity,
OFFICER FREDERICK, in his individual capacity,
COUNSELOR JASON A. HUTSON, in his individual capacity,
ADMINISTRATOR GEORGE TRENT,
in his individual and official capacities,
CHIEF OF OPERATIONS JOHN V. LOPEZ,
in his individual and official capacities and
DEPUTY DIRECTOR PAUL O'DELL,
in his individual and official capacities,

        Defendants.


**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE AND
SCHEDULING ORDER FOR DEFENDANT ELDER'S COUNTERCLAIM**


I.  Background


     On August 15, 2013, the pro se[1] plaintiff, Roy Franklin

Hillberry, II ("Hillberry"), initiated this action in this Court by

filing a civil rights complaint which alleged that correctional

guards at the North Central Regional Jail ("NCRJ") used excessive

force against him and assaulted him twice within two days in May

_____

     [1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer.  Black's Law
Dictionary 1416 (10th ed. 2014).

2012 which resulted in the plaintiff requiring treatment in the emergency room. Pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 636, this Court then referred the plaintiff's complaint to the Honorable James E. Seibert, United States Magistrate Judge, for report and recommendation.

The defendants filed answers to Hillberry's complaint, including defendant Lt. R. Elder ("Elder") who filed his answer on November 13, 2013. After this Court granted his motion for leave to file a counterclaim, Elder filed a counterclaim alleging that the plaintiff actually initiated the incident, assaulted him, and caused severe head trauma resulting in seizures and short-term memory loss.

A period of discovery has taken place since the counterclaim was filed and several motions have been filed in this action. Thus, the magistrate judge issued a report and recommendation on motions that were pending in this action. When the magistrate judge entered his report and recommendation, there were four motions pending (in the order they were filed): (1) defendants' motion for summary judgment (two responses by the plaintiff, no reply to either by defendants), (2) plaintiff's motion for sanctions, (3) plaintiff's motion to dismiss, and (4) plaintiff's motion to compel. The magistrate judge recommended that the defendants' motion for summary judgment be granted, that all of the plaintiff's motions be denied, and that defendant Elder's

counterclaim be granted in part. The plaintiff has filed objections and the defendants filed a response thereto.

For the reasons that follow, this Court finds that the magistrate judge's report and recommendation should be adopted and affirmed in its entirety.

## II.  Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because objections have been filed in this case, this Court will undertake a de novo review. As to those portions of the magistrate judge's recommendation to which there were no objections filed, the findings and recommendation will be upheld unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

## III.  Discussion

As stated above, there were several motions pending at the time the magistrate judge entered his report and recommendation. This Court will review those motions and the magistrate judge's findings in the order that those motions were filed.

A.  Defendants' Motion for Summary Judgment

The defendants split their motion for summary judgment into three arguments based on different sets of defendants. As such, this Court will dispose of those issues in the order presented by the moving party.

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))). In reviewing the supported underlying facts, all

inferences must be viewed in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

1.  Defendants Trent, O'Dell and Lopez — Plaintiff's Supervisory Claims Fail as a Matter of Law

The defendants assert that there are no allegations of assault against Administrator George Trent ("Trent"), Deputy Director Paul O'Dell ("O'Dell"), or Chief of Operations John V. Lopez ("Lopez"). Thus, the defendants argue that the plaintiff's supervisory claims must fail as liability cannot be solely based on respondeat superior in a § 1983 action.  The defendants contend that the plaintiff has alleged that the defendants knew of a custom of guards assaulting inmates, but that the plaintiff has not provided any evidence to support such an allegation despite extensive discovery and the plaintiff's awareness of applicable case law and legal standards.

The plaintiff argues that his grievance form provided defendants Trent, O'Dell, and Lopez with prior knowledge of assaults.  Further, the plaintiff contends that Trent, O'Dell, and Lopez had knowledge of the other seven named defendants' repeated involvement in multiple assaults which the plaintiff contends is supported by grievances, complaints, lawsuits, incident reports, and other documentation regarding excessive force.

The plaintiff then filed a supplementary response.  In it, the plaintiff states that a correctional officer, Joey Lipscomb

("Lipscomb"), was trained to falsify reports and that Lipscomb only received a reprimand for causing the death of an inmate. Additionally, he asserts that other records from the day that the inmate was killed by Lipscomb (in 2005) were falsified. This Court will infer that the plaintiff is arguing that this information shows that such incidents are widespread and pervasive. Throughout the document, the plaintiff reviews exhibits that he has attached which he argues proves the failure of Trent, O'Dell, and Lopez to fulfill their supervisory roles.

In his report and recommendation, the magistrate judge notes that as to the nine defendants other than Stewart, 67 civil actions have been filed against them in the last two years but that no prior discipline for those defendants for excessive force have been filed. As to Stewart, he has had two cases filed against him, one that was dismissed and one that was settled which involved excessive force which resulted in the death of an inmate. The magistrate judge found that based on the evidence, which encompasses affidavits, copies of grievances, complaints, and investigations performed, there is no credible evidence to support the plaintiff's allegations. The magistrate judge found that this evidence shows that correctional officers are disciplined if an inmate's claim is substantiated, that certain investigations are forwarded to the Regional Jail Authority where there are conflicting stories, and inmates are sent to protective custody if

they report that they are in fear of certain correctional officers. Based on the record, the magistrate judge found that although there have been incidents of excessive force at the NCRJ, they are infrequent. Moreover, the magistrate judge found that there was no evidence to support the plaintiff's allegations that ordered beatings occurred or that the supervisory defendants were deliberately indifferent to such actions.

In his objections, the plaintiff argues that Trent stood by while he was beaten on May 10, 2012 and thus showed deliberate indifference. The plaintiff otherwise reiterates his earlier arguments. In their response to the objections, the defendants again argue that the plaintiff has failed to provide evidence to support his assertions and has concocted his argument that Trent stood by at a late stage without evidence to support it. Further, the defendants contend that the magistrate judge correctly considered the reports that were provided during discovery.

In order to establish liability under § 1983, which requires personal violations, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2010); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). A plaintiff may succeed on a claim against a governmental entity, although not technically a "personal" violation, if the governmental entity had a policy or custom of failing to train its employees, and that failure amounted

to "deliberate indifference" causing the constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). This standard has been extended to supervisors who act inadequately when responding to actual or constructive knowledge that a subordinate is engaged in pervasive and unreasonable conduct that affirmatively leads to a particular constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).

Based on the record, this Court does not find that there was a policy or custom at the NCRJ which led to the incident underlying this accident. As indicated by the magistrate judge, the record shows that in the two years preceding the incident, there were no credible allegations of excessive force or abuse of any kind that were not investigated and that did not result in appropriate action against officers involved in such conduct. See ECF No. 204 at 19-21 (detailing grievances and consequences). Thus, although there have been incidents of excessive force at NCRJ, the record does not show that there was or is pervasive and unreasonable conduct that is customarily undertaken by the staff at the NCRJ, including supervisors. Further, any incident that evolved to the level of a constitutional violation was investigated and the person involved disciplined. Accordingly, the plaintiff fails to state a claim against Trent, O'Dell and Lopez in their individual or official capacities.

In his objections, the plaintiff raises for the first time a claim that Trent witnessed and stood by while the plaintiff's alleged beating occurred. However, the record does not provide any support for such a claim. Further, the plaintiff has not made this claim previously and its introduction at this stage is untimely and would be prejudicial to Trent who was not put on notice of the claim by the plaintiff's complaint or his other pleadings. Finally, this Court agrees with the magistrate judge that the claim was made in bad faith and should therefore be dismissed as frivolous and malicious. Consequently, the magistrate judge's findings are affirmed as there are no genuine issues of material fact that remain regarding the plaintiff's claim against Trent, O'Dell, and Lopez.

2. <u>Elder — Plaintiff's Assault Claim (May 10, 2012) Fails as a Matter of Law</u>

The defendants argue that the defendant has failed to provide supporting evidence for his assault claim against Elder. Further, the defendants assert that the evidence actually refutes the plaintiff's claim. The defendants specifically note an eyewitness report of a nurse who was a contracted employee, rather than a direct employee of the Regional Jail Authority. The nurse reported that an administrative segregation hearing for the plaintiff was held, that Elder explained at the hearing why the plaintiff needed to be placed in segregation, the plaintiff became upset, and then plaintiff shoved Elder in the neck/throat area knocking him

backward and causing him to fall and hit his head on the floor. Another eyewitness submitted a report with a similar story. Thus, the defendants contend that there is no evidence that Elder chest pumped the plaintiff or otherwise started the altercation and that the only evidence the plaintiff has in his favor is his own "self-serving" grievance form.

As to Elder, the plaintiff argues that the incident reports regarding May 10, 2012 are conflicting, that Elder's head trauma was preexisting, and that the nurse who examined Elder only found a superficial scratch. The plaintiff contends that he did not disobey orders and was compliant, that the seven defendants and Elder assaulted him without cause, and that he suffered significant injuries afterward including a blocked heart valve.

The magistrate judge found that the plaintiff has failed to provide evidence to support his assertions regarding Elder. Further, the magistrate judge found that the subsequent force used was not excessive and that the use of the mace was in compliance with the protocol established by the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA"). Thus, the magistrate judge found that the force applied was applied in a good faith effort to maintain or restore discipline.

In his objections, the plaintiff reiterates his arguments that there are inconsistencies in the record that support his version of events. For example, the plaintiff asserts that some reports state

that Stewart opened the door and others state that Elder opened the door.  Further, some reports state that the plaintiff initiated the conversation with Elder while others state that Elder started talking to plaintiff as Elder walked toward the door. Additionally, the plaintiff argues that Elder reported he attempted to open the door and was then shoved through the door which the plaintiff contends is impossible as the door would have been closed because Elder only attempted to open it.  Otherwise, the plaintiff reiterates his arguments as to the severity of his injuries and the minuteness of Elder's injuries.  The plaintiff also contends that his state court criminal case involving this incident should not be considered as there is insufficient evidence to support it (he also argues that his constitutional rights have been violated because he has not yet gone to trial).

In response to the plaintiff's objections, the defendants assert that 100% consistency of statements is not required as different witnesses will have different vantage points during an event.  Further, the defendants argue that the statements provided show that the plaintiff initiated the incident not Elder.

In order to prove an excessive force claim, a plaintiff must first demonstrate that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson v. McMillan, 503 U.S. 1, 8 (1992) (citation omitted).  Second, a plaintiff must show that prison officials inflicted unnecessary and

wanton pain and suffering. Id. at 6. Where there has been an inmate disturbance, a court must determine whether unnecessary and wanton pain and suffering was inflicted "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). To determine whether an act was malicious or sadistic, the following factors are considered: (1) "the need for application of force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of the injury;" (4) "the threat reasonably perceived by the responsible official;" and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996).

The plaintiff has alleged that Elder initiated the assault, that he used his arms to block Elder and to push Elder away, and that he was then beaten severely even though he did not resist. However, as the magistrate judge noted, there is no evidence which supports the plaintiff's recitation of what occurred during the underlying incident. To reiterate the magistrate judge's finding, the evidence supplied by both the plaintiff and Elder actually supports Elder's recitation of the incident that the plaintiff was the initial aggressor. Further, the evidence supports a finding that use of force and O.C. spray was subsequently used to subdue the plaintiff after plaintiff initiated the assault and continued

to resist.[2]  Thus, there is no evidence that the force used against plaintiff was not applied in a good faith effort to maintain or restore discipline.  As such, the plaintiff's claim fails as there are no genuine issues of material fact that would allow his claim to go forward.

     3.    <u>Stewart, Mays, Richards, Adams, Abner, Frederick, and Hutson — Claims Regarding the May 10, 2012 Altercation Should be Dismissed</u>

The plaintiff claims that after he was assaulted by Elder, he was then assaulted by defendants Sergeant W. O. Stewart ("Stewart"), Corporal Reta Mays ("Mays"), Officer Richards ("Richards"), Officer Adams ("Adams"), Officer Timothy Abner ("Abner"), Officer Frederick ("Frederick"), and Counselor Jason A. Hutson ("Hutson")(collectively "the seven defendants").  First, the defendants argue that the evidence does not support the plaintiff's allegation that Elder assaulted the plaintiff.  Thus, the seven defendants assert that they were justified in tackling plaintiff and using necessary force to restrain him.  Further, the defendants contend that the plaintiff continued to disobey the seven defendants' instructions and thus made further force necessary which is evidenced by the incident reports (Ex. D).  Additionally, the defendants assert that the plaintiff has failed to provide supporting evidence as he was asked to provide witnesses who

_____

[2]ECF Nos. 1 at 10, 24-25; 1-2 at 1, 5, 6-7, 10, 12-19; and 1-3 at 1, 3-4.

supported his claim and could not provide any. Thus, the defendants assert that the only evidence the plaintiff has in his favor is his own grievance form.

The magistrate judge found that the plaintiff's claims were unsupported by the record. The magistrate judge found that a review of the medical records shows that the plaintiff had a knot on his wrist and some sprains after the altercation, but nothing as severe as the beating he describes. Further, the magistrate judge reviewed video evidence, not of the actual altercation, that shows that the plaintiff did not have the type of abrasions he states he did and that show that he had a normal gait, was not showing the signs of having a severe injury to his foot or ankle, and was even able to kick his cell door at one point. These videos are from the same day, the day after, and even a month later when the plaintiff had contended that he had to hop on one foot for almost six months because of the pain in his ankle. Further, the magistrate judge notes that there is only one complaint on record that the plaintiff filed regarding a follow-up assault by Frederick despite the fact that the plaintiff had other times to report the assault and injuries. Finally, the magistrate judge found that the force used was reasonable and applied in a good faith effort to maintain or restore discipline and was not performed in a malicious manner.

In his objections, the plaintiff asserts that the incident reports contradict each other in that Mays and Adams reported being

exposed to the plaintiff's blood which would not have occurred if the plaintiff had not been beaten.  Otherwise, the plaintiff reiterates his earlier arguments.

Again, the incident reports attached to the plaintiff's complaint do not support his claims against these defendants.  All witnesses of the incident stated that the plaintiff was the aggressor and that subsequent force had to be used against the plaintiff because he was resisting.  Additionally, incident reports do not support the plaintiff's version as to what happened in the recreation yard following the incident.  The record, however, shows that plaintiff was instead walked around the yard; given fresh air, water, and paper towels to clear his face; and then given a shower and clean clothing shortly thereafter.

As to plaintiff's injuries, these are established by medical records and video taken soon after the incident and even a month after the incident.  These records show that although the plaintiff had injuries, those injuries were not severe as the plaintiff reported and that the plaintiff has in fact dramatized his description of those injuries.  Further, those records show that the plaintiff was receiving medical treatment.  Additionally, these records do not support the plaintiff's claim that he was assaulted and stomped in the shower the following day as his sick call requests made after such an incident allegedly occurred did not

state that any such beating had occurred or any injuries that would have resulted from such a beating.

The plaintiff's claims against Elder, Stewart, Mays, Richards, Adams, Abner, Frederick, and Hutson find no support in the record, which includes evidence supplied by the plaintiff himself. In fact, the plaintiff's own evidence supports the defendants' version of events. As such, there are no genuine issues of material fact as to the plaintiff's claims against these defendants. Further, this Court agrees with the magistrate judge that these claims were made in bad faith as they were only made based on the plaintiff's baseless allegations and are therefore dismissed as frivolous and malicious.

4.  Plaintiff's Remaining "Excessive Force" Claims Should be Dismissed as a Matter of Law (Retaliation)

The plaintiff has claimed that on May 10, 2012, he was escorted outside by the seven defendants above and beaten severely. Further, the plaintiff claimed that Frederick assaulted him the next day, May 11, 2012, by taking him in the shower and violently assaulting him causing severe head and body trauma. The plaintiff also alleges that he was denied medical treatment thereafter. The defendants assert that the plaintiff has not provided any evidence regarding these claims and that they are also disputed by medical records which the plaintiff has provided. The medical records show that the plaintiff was seen May 10, 2012 by a nurse and that he underwent x-rays which showed that he had no fractures.

Additionally, the plaintiff saw a doctor on May 11, 2012, which resulted in normal results for an EKG, and swelling in the plaintiff's right wrist and ankle which was treated with ibuprofen. The defendants argue that this is inconsistent with someone who was kicked and stomped until unconscious, as the plaintiff has claimed. The plaintiff then saw the doctor five times throughout May and June 2012 and had numerous visits with nurses throughout the same time period—and the only further symptom was swelling of his ankle, for which he was prescribed an anti-inflammatory.

In response to the above, the plaintiff reiterates his arguments from his complaint. The plaintiff argues that Elder took him to a hearing room that is not generally used because it does not have cameras and that Elder chest pumped him and drew back to hit him in the face. Thereafter, after the plaintiff blocked Elder's punch, the plaintiff contends that the seven defendants beat him for ten minutes and sprayed him with mace twice. The plaintiff asserts that there is evidence because no violation reports were filed, the plaintiff was taken to a room without a camera, and Elder has falsified his reports. The plaintiff contends that he asked his mother to call the state police and that he filed a grievance form. The plaintiff asserts that Frederick then, in retaliation on May 11, 2012, assaulted the plaintiff in the shower room. The plaintiff argues that the medical records actually do support his story and further that when the state

police called, Mays gave them a false report about what had happened to the plaintiff.

The magistrate judge found that the record reveals that the plaintiff is a disruptive inmate and that the adverse events that occurred were not motivated by retaliation but rather by the conduct of the plaintiff. Additionally, the magistrate judge notes that the plaintiff has provided no evidence nor alleged that the defendants actually made good on their threats to beat the plaintiff every day. Further, the magistrate judge found that the medical records did not support the plaintiff's allegation that he had not received medical treatment, which was also a form of alleged retaliation. The record shows that the plaintiff was examined several times after the incident, prescribed medication, and that the injuries were not serious.

In his objections, the plaintiff reiterates his previous arguments. The plaintiff asserts that there are several genuine issues of material fact that remain in this action. In response, the defendants argue that the plaintiff has not provided any evidence that the defendants interfered with plaintiff's medical care or that is medical care was insufficient. Additionally, the defendants assert that the plaintiff has failed to provide evidence that his injuries were as serious as he has claimed. Additionally, the defendants assert that the magistrate judge has correctly

assessed the evidence in this action in light of the plaintiff's <u>pro se</u> designation.

To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Causation requires a showing that "but for the retaliatory motive, the complained of incident . . . would not have occurred." <u>Id.</u> A prisoner's claim of bias and retaliation is viewed with skepticism and a plaintiff who claims his constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to preclude a dismissal of his claim. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996); <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).

As the magistrate judge noted, the record indicates that the plaintiff is a disruptive inmate and that such disruption is the actual impetus for the adverse events that have occurred. Other than his self-serving grievances and conclusory allegations, the plaintiff has not provided evidence that he was threatened or that the defendants actually followed through with threats against him. As there is no evidence in the record that he was physically retaliated against or threatened, the plaintiff has failed to

overcome the standard for surviving a motion for summary judgment when a plaintiff has raised a retaliation claim.

Further, the plaintiff has failed to show that he was retaliated against by way of a deliberate indifference to his medical needs. To support a claim for denial of medical care, the plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. at 105. The plaintiff has again failed to provide evidence that his medical needs were deliberately denied and that such was done in retaliation against him. The record shows that the plaintiff received medical care the day of the assault, the day immediately after the incident, and several times after for both injuries from the underlying incident and for other chronic health needs that preceded the incident. Moreover, the plaintiff even refused certain medical treatment which undermines his claims regarding the amount of pain he had. Thus, the plaintiff has failed to support his claims and this Court finds that there are no genuine issues of material fact. Additionally, this Court finds that the magistrate judge should be affirmed in his finding that the plaintiff's claim was raised in bad faith and that it should be dismissed as frivolous and malicious.

B.  Plaintiff's Motion for Sanctions

The plaintiff argues in his motion for sanctions that the defendants filed their motion for summary judgment prematurely as there was still ongoing discovery.  Further, the plaintiff contends that the defendants failed to comply with the magistrate judge's order for the defendants to produce certain documents by July 9, 2014.  In response, the defendants argue that the motion for sanctions was filed prematurely and without merit.  The defendants note that the motion was filed July 10, 2014 when the plaintiff would not have been notified that the defendants had complied with the magistrate judge's order, which they did.  In reply, the plaintiff asserts that the defendants have admitted in their response that they did not comply with the magistrate judge's order and that the defendants forced the plaintiff to respond to a motion for summary judgment without those documents.  The magistrate judge denied this motion.

This Court finds that this motion should be denied and the magistrate judge's finding affirmed.  The plaintiff's motion was filed on July 10, 2014 and the plaintiff would not have known that the defendant had not or had complied with the magistrate judge's order.  There is nothing in the record that suggests that the defendants did not comply with the magistrate judge's discovery order and thus, the plaintiff's motion is frivolous and without merit.  As such, this motion is denied.

## C.   Plaintiff's Motion to Dismiss

The plaintiff argues in his motion to dismiss Elder's counterclaim that the medical records do not support Elder's claims.  The plaintiff asserts that Elder was examined by a doctor on May 11, 2012 and that no injuries were reported.  Thus, the plaintiff requests that the counterclaim be dismissed.  In response, defendant Elder argues that his claim was sufficiently pled and that he has provided supporting evidence which shows that the plaintiff struck and knocked him to the ground.  Additionally, Elder contends that he has provided sufficient evidence for his claims of damages based on his medical records from Doddridge Family Medicine, Bridgeport Physical Therapy, Travis Physical Therapy, and United Hospital which show a left knee injury and head trauma.  Additionally, because of the head trauma, Elder contends that he suffered from seizures and while having a seizure fell off his porch and suffered a rotator cuff tear.  Because of these injuries, he was unable to return to work, which Elder asserts is also supported by the record.  Further, Elder requests attorney's fees and costs for responding to the motion as it is frivolous and based on "cherry-picked" pieces of the record.  In reply, the plaintiff argues that Elder is making false claims, that the medical records show that he was not injured after the May 10, 2012 incident or that any past injuries were aggravated by it.  Further,

the plaintiff contends that Elder continued to work for four and a half more hours after the incident.

The magistrate judge found that despite the fact that Elder had previous head trauma, the record showed that Elder suffered a new closed head injury/traumatic brain injury when he struck his head on May 10, 2012. Elder also sprained his left knee. Because of this, the magistrate judge found that Elder has suffered from several symptoms of serious head trauma, a rotator tear from a fall caused by a seizure, and was forced to prematurely retire.

The magistrate judge then found that because Elder's counterclaim arises out of the same incident, this Court has jurisdiction over the state claim. First, the magistrate judge found that Elder's claim for tort of outrage/intentional infliction of emotional distress must be dismissed because the plaintiff acted impulsively and thus does not meet the requirements for those claims. As to battery, the magistrate judge found that the record supports a finding that the plaintiff unlawfully, knowingly, and intentionally made physical contact of an insulting or provoking nature with Elder and thus, this claim should proceed. The magistrate judge further found that Elder's claim for assault is supported by the record and should also proceed.

In his objections, the plaintiff argues that Elder has failed to sufficiently plead his claims pursuant to <u>Iqbal</u> and <u>Twombly</u>

because he has only made legal assertions and does not have supporting evidence.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to

raise a right to relief above the speculative level." <u>Bell</u>
<u>Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 663-666 (2009).

1. <u>Jurisdiction and Evidence of Injury</u>

In order to hear Elder's state law counterclaims, this Court
must have the authority to maintain supplemental jurisdiction.
This Court may hear those claims pursuant to Article III of the
United States Constitution if they arise out of the "same case or
controversy". 28 U.S.C. § 1367. This Court agrees with the
magistrate judge that Elder's counterclaims do arise out of the
same case or controversy as they involve the same underlying
incident which took place at the NCRJ.

Further, this Court finds that Elder has sufficiently pled his
claims and that there is evidence that Elder was injured during the
altercation beyond any preexisting head injury he may have had.
Elder has provided sufficient medical records to show a traumatic
brain injury and a sprained knee. Additionally, he has shown
symptoms from those injuries such as headaches; nausea;
intermittent loss of memory; loss of consciousness; and seizures
which have led to other injuries. Additionally, Elder has provided
evidence that he was unable to return to work and had to
prematurely retire. As such, this Court finds that the plaintiff's
motion to dismiss must be denied.

2. <u>Outrage/Intentional Infliction of Emotional Distress</u>

The magistrate judge found that Elder's outrage/intentional infliction of emotional distress claim should be dismissed. No objections were filed as to this finding. Accordingly, this Court will undertake a review of whether that finding was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

The magistrate judge found that the plaintiff's acts were impulsive, opportunistic, and made in anger in the heat of the moment. Thus, the magistrate judge found that Elder had failed to plead evidence of the second element for a tort of outrage or intentional infliction of emotional distress claim which requires that "the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct." <u>Travis v. Alcon Laboratories, Inc.</u>, 504 S.E.2d 419, Syl. Pt. 3 (W. Va. 1998). This Court finds that the magistrate judge's finding was not clearly erroneous or contrary to law and thus affirms such a finding.

3. <u>Battery</u>

"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." <u>W. Va. Fire</u>

& Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004) (citation omitted).  Also, "[i]n order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person."  Id.[3]

As set forth in this opinion, the record supports a finding that the plaintiff intentionally caused a harmful or offensive contact with Elder and that a harmful contact resulted from that action.  The evidence therefore does not support a dismissal of Elder's claim and the magistrate judge's finding is upheld.

4.  Assault

"An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension."  Stanley, 602 S.E.2d at 495 (citing Restatement (Second) of Torts § 21 (1965)).  This Court also finds that the record provides sufficient evidence to support Elder's assault claim and that it was not insufficiently pled in his complaint.  Thus, Elder's claim may proceed and the magistrate judge's recommendation is adopted.

---

[3]This Court notes that the magistrate judge applied West Virginia Code § 61-2-10b which is a criminal statute.  Thus, this Court has applied the definition that West Virginia applied in civil actions.  This Court has done the same for the assault section that follows.  However, the outcome is not changed by application of the civil definitions.

5. <u>Elder's Request for Attorney's Fees and Costs</u>

Elder has also requested attorney's fees and costs. Elder argues that the plaintiff's motion to dismiss is frivolous, distorts the facts in this case, and "cherry picks" statements from the record to make it seem like the underlying incident occurred as he has claimed it occurred. Elder has not neither brought his claims under the Civil Rights Act or under another federal statute that might include a fee shifting schedule.[4] Thus, Elder must meet the standard of the "American Rule" in order for this Court to award attorney's fees and costs.

The "American Rule" prohibits the shifting of attorney's fees in most cases. <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 259 (1975). However, "an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]" <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991) (citing <u>Alyeska</u>, 421 U.S. at 258-259, 260). Such shifting may occur "when the party practices a fraud upon the court . . . or delays or disrupts the litigation or hampers a court order's enforcement." <u>Id.</u> (internal citations omitted).

_____

[4]The Court notes that even if he had, seeking attorney's fees and costs under such a statute would likely be premature at this stage.

28

Based on the "American Rule," this Court must deny Elder's request as it finds it is without merit. This Court finds that the plaintiff's filing of a motion to dismiss was not outrageous although he does appear to have skewed the record in his favor. However, skewing the record in his favor does not arise to the level that is needed to overcome the presumption against attorney's fees designated by the "American Rule." As such, Elder is not entitled to attorney's fees and costs as to the plaintiff's filing and defense of the motion to dismiss.

D.   <u>Plaintiff's Motion to Compel</u>

The plaintiff requests that the defendants provide a copy of his transcript. The plaintiff argues that the transcript is relevant to all parties and claims, that it would not be unduly burdensome for the defendants to produce, and that the defendants did not object when he requested a copy of it. The plaintiff has sought sanctions against the defendants. Further, the plaintiff argues that he should not be required to pay for the taking of the deposition, as the defendants have requested. In response, the defendants assert that they merely forwarded the invoice from the court reporter who had prepared the transcript per the plaintiff's request. The defendants argue that they should not have to pay for the plaintiff's transcript and that the plaintiff should not get a transcript free of charge. A reply was not filed.

The magistrate judge denied the plaintiff's motion to compel as he recommended granting the motion for summary judgment and thus found that the motion is moot. In his objections, the plaintiff argues that this motion should not have been denied as moot as the plaintiff's deposition likely contains information that he can use to support his claims so that his case would not be dismissed.

This Court finds that the plaintiff's motion was untimely. The plaintiff has argued in his objections that the deposition transcript would have helped him to defend against the defendants' motion for summary judgment. However, the deposition was not taken during discovery for the plaintiff's underlying claims but was taken as discovery for Elder's counterclaims.

In this case, there were two discovery deadlines as Elder's counterclaim was filed later in this action. The first discovery deadline for the plaintiff's underlying claims was April 17, 2014. The defendants' motion for summary judgment was filed by the dispositive motion deadline for those claims which was May 19, 2014. The second discovery deadline for Elder's counterclaims was August 30, 2014. The plaintiff's deposition was taken on July 31, 2014, within the second discovery deadline. The plaintiff filed his motion to compel on November 6, 2014.

The plaintiff argues now that his motion to compel was filed so that he could have access to his deposition transcript to defend against the motion for summary judgment. It is clear from the

timeline above that the plaintiff's motion to compel was filed far too late as it was filed seven (7) months after the discovery deadline for the plaintiff's claims and almost six (6) months after the dispositive motions deadline for the plaintiff's claims. As such, the plaintiff's motion to compel is denied as untimely.

E.    <u>Scheduling Order</u>

As this Court has affirmed and adopted the recommendations of the magistrate judge, defendant Elder's counterclaims remain at issue in this action. This Court notes that the discovery deadlines[5] have expired in this action and thus, this issue should proceed to pretrial and trial disposition. Accordingly, the parties are DIRECTED to adhere to the following deadlines regarding the remaining claims in this action which arise from defendant Elder's complaint:

1.    <u>Dispositive Motions</u>: All dispositive motions, as well as deposition transcripts, admissions, documents, affidavits, and any other such matters in support thereof, shall be filed at the Clerk's Office with copies served upon opposing counsel by **April 29, 2015**. Any such motion must be supported by a memorandum at the time the motion is filed. Memoranda in opposition to such motions

---

[5]However, parties have a continuing obligation to supplement their responses beyond the discovery cut-off date as provided in Fed. R. Civ. P. 26(e). The parties should refer to LR Civ P 5.01, LR Civ P 26.01-26.04, LR Civ P 33.01, LR Civ P 34.01, LR Civ P 36.01, LR Civ P 37.02 for further instructions on discovery practice.

filed on the above deadline date shall be filed with copies served upon opposing counsel on or before **May 20, 2015**. If a motion has been filed before the above deadline date, opposing counsel is directed to comply with LR Civ P 7.02(b), which requires responses no later than twenty-one days after the date of service of the motion. Any reply memoranda shall be filed with copies served upon opposing counsel on or before **June 3, 2015** or, if the response is filed prior to the above deadline date, within fourteen business days from the date of service of the memorandum in response to the motion. All dispositive motions unsupported by memoranda will be denied without prejudice. The parties shall comply with LR Civ P 7.02 imposing a page limitation upon memoranda unless a motion to exceed the page limitation is granted. <u>See</u> LR Civ P 7.02.

Factual assertions made in memoranda should be supported by specific references, including page or paragraph numbers, to affidavits, depositions or other documents made a part of the record before the Court. Copies of the supporting documents, or relevant portions thereof, should be appended to the memoranda. The parties may refer to LR Civ P 7.02 for details on motion practice before this Court.

**Deadlines for the filing of dispositive motions shall be altered only upon order of the Court.**

2. <u>Settlement Conference and Fed. R. Civ. P. 26(a)(3)Disclosures</u>: Pursuant to LR Civ P 16.04(a), counsel and

unrepresented parties shall meet to conduct settlement negotiations no later than **July 31, 2015**.  Lead trial counsel for the plaintiff first named in the complaint (or an attorney representing a defendant if the plaintiff is appearing <u>pro se</u>) shall take the initiative in scheduling such a meeting; all other counsel shall cooperate in the effort to achieve a successful negotiation and settlement.  Counsel and unrepresented parties must be prepared at the pretrial conference to certify that they tried in their meeting to settle the case.

If the case is not settled at the meeting, and if there is no order or stipulation to the contrary, counsel and unrepresented parties shall make all Fed. R. Civ. P. 26(a)(3) disclosures at the settlement meeting.

3.   <u>Jury Instructions and Voir Dire</u>:   Proposed jury instructions **on substantive theories of recovery or defense**, on damages and on evidentiary matters peculiar to the case, together with pertinent statutory and case authority, special interrogatories and verdict forms, if any be appropriate to the case, and all proposed voir dire questions requested by counsel for submission to the jury shall be exchanged by counsel and filed not later than **August 11, 2015**.

**If the instructions and voir dire in this case are being typed on a computer, counsel are requested to provide to the court a disk containing the instructions in WordPerfect 12.0 format which is**

labeled as to the case style, civil action number and party proposing the instructions. The envelope containing the disk should be marked "Contains Disk—Do Not X-Ray—May Be Opened for Inspection." The disk will be returned to counsel if requested.

4. <u>Motions in Limine</u>: **No motion in limine may be filed** unless and until the moving party <u>consults</u> with opposing counsel to determine whether the matter presented in the motion is <u>actually in dispute</u>. If the matter is not in dispute, but the party wishes to preserve the matter for the record, such party may file a stipulation <u>after</u> consulting with opposing counsel.

Where a matter is actually in dispute, all motions in limine, including motions relating to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), accompanied by memoranda of law, and all other related pretrial motions shall be filed not later than <u>July 23, 2015</u>. Responses to such motions shall be filed by <u>July 30, 2015</u>.

If a motion has been filed before the above deadline date, opposing counsel is directed to respond no later than fourteen days after the date of service of the motion in accordance with LR Civ P 7.02, or respond by the date given in this scheduling order, whichever date comes first.

5. <u>Joint Pretrial Order</u>: A proposed joint pretrial order, titled "Pretrial Order," shall be filed not later than **<u>August 6,</u>**

**2015**.  The proposed joint pretrial order shall contain at least those matters provided for under LR Civ P 16.04(b).  The witness lists, **which shall be filed as part of the pretrial order**, shall be considered by this Court as final lists and shall not be modified except for good cause shown.  Following the pretrial conference, this Court shall enter the pretrial order which shall then be modified only with the permission of the Court.

**In most cases, the plaintiff shall be responsible for initiating the preparation of the joint pretrial order.  However, in cases involving a <u>pro se</u> plaintiff, the defendant shall be responsible for initiating the preparation of the joint pretrial order.**

6.  <u>Exhibits and Objections to Exhibits</u>:  On or before **August 10, 2015**, plaintiff and defendant shall each:

    a.    file **A LIST** of proposed exhibits,

    b.    submit to the Clerk **ONE BINDER OF COPIES OF THE EXHIBITS**, with the exhibits indexed and individually tabbed, for the Court's use, and

    c.    forward copies of the proposed exhibits to opposing counsel.

Objections to exhibits, **WITH THE STATED REASONS FOR THE OBJECTION AND THE EXHIBIT TO WHICH OBJECTION IS MADE ATTACHED**,[6]

---

[6]When a party objects to an exhibit which is voluminous in size, the party may refer to the exhibit by number and dispense with this requirement, as long as the Court has previously been provided with a copy of the relevant exhibit binder.

shall be filed on or before **August 17, 2015**. Failure to state the reasons for the objections may constitute a waiver of objections. Further, failure to timely file an objection to an exhibit shall result in this Court deeming the exhibit admitted.

All exhibits shall be appropriately marked in numerical sequence (not lettered). Exhibit markers may be secured from the Clerk. **ORIGINAL EXHIBITS** shall be filed **AT THE TIME OF TRIAL AND SHOULD NOT BE FILED PRIOR TO TRIAL**. If counsel desires each juror to have a binder of copies of exhibits to view as counsel examines witnesses, these should be prepared for presentation to each juror at the appropriate time but with the Court's permission.

7.   <u>Interrogatories and Depositions to be Used at Trial and Objections</u>: On or before **August 10, 2015**, plaintiff shall file any interrogatories, answers thereto, depositions, etc., **specifying the appropriate portions thereto that plaintiff intends to offer in this case**. Defendant shall do the same on or before **August 17, 2015**. Any objection to the introduction of any of the foregoing shall be filed in writing by the objecting party or parties no later than **August 19, 2015** or such objection shall be deemed to have been waived. This paragraph does not apply to discovery materials that will be used at trial solely in cross-examination or for impeachment.

8.　Biographical Sketches:　Biographical sketches of any proposed expert witnesses shall be filed and served upon opposing counsel by **August 10, 2015**.

9.　Stipulation of Facts:　Counsel are encouraged to meet and enter into stipulations of facts in this case and any such stipulation shall be reduced to writing, signed by counsel and filed and served upon opposing counsel by **August 10, 2015**.

10.　Pretrial Conference/Final Settlement Conference:　A pretrial conference/final settlement conference shall be held on **August 10, 2015 at 11:00 a.m.** at Wheeling, West Virginia.　The conference shall be attended by lead trial counsel for each represented party and all unrepresented parties.　Counsel and parties should be prepared to participate fully and to discuss all aspects of the case and the matters set forth in the pretrial order previously filed.　Individuals with full authority to settle the case for each party shall be immediately available by telephone as this Court finds that it would be beneficial to have the parties participate in the conference by telephone.

Any such attorney or pro se litigant shall advise the Court as soon as possible prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel and the pro se litigant of his or her appearance by telephone; (2) advise the Court of the name of the attorney who will initiate the conference call and all such attorneys or pro se litigants

appearing by telephone; and (3) initiate a timely conference telephone call with such attorneys and <u>pro se</u> litigant to the Court at 304/233-1120 at the time of the scheduled conference.  If the parties cannot reach agreement as to the initiator of the call, the Court will make that determination.

11.  <u>Trial</u>:  Jury selection in this action shall commence on **<u>August 25, 2015 at 8:30 a.m.</u>** at Wheeling, West Virginia.  Trial will commence upon the completion of jury selection and trial in any prior case scheduled for this date.  This case is presently the <u>second</u> case on the trial docket for that week.

12.  <u>Motion for Continuance</u>:  A party or parties requesting a continuance must contact all other parties to determine three possible dates to which to move the deadline or hearing.  The moving party must specify these three possible dates within the motion to continue.  LR Gen P 88.02.  If any party or parties object to a continuance, that fact shall be noted in the motion.

13.  <u>Settlement Authority and Sanctions</u>:  At least one of the attorneys for each party and all unrepresented parties participating in any conference before trial shall have authority to make decisions as to settlement, stipulations and admissions on all matters that participants reasonably anticipate may be discussed.  Counsel and parties are subject to sanctions for failures and lack of preparation specified in Fed. R. Civ. P. 16(f) and LR Civ P 37.01 respecting pretrial conferences or orders.

14. <u>Deadlines Final</u>:  The time limitations set forth above shall not be altered except as set forth in LR Civ P 16.01(f).

All dates for filings refer to the date the materials must be actually <u>received</u>, not the mailing date.

## IV.  <u>Conclusion</u>

Based on the analysis above, this Court finds that the magistrate judge's report and recommendation is AFFIRMED AND ADOPTED in its entirety.  As such, the defendants' motion for summary judgment (ECF No. 114) is GRANTED; plaintiff's motion for sanctions (ECF No. 138) is DENIED; plaintiff's motion to dismiss Elder's counterclaim (ECF No. 142) is DENIED IN PART and GRANTED IN PART; and plaintiff's motion to compel (ECF No. 197) is DENIED. The plaintiff's complaint is therefore DISMISSED WITH PREJUDICE against all defendants.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the <u>pro se</u> plaintiff by certified mail and to counsel of record herein.

DATED:    January 29, 2015


<u>/s/ Frederick P. Stamp, Jr.   </u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE